236 So.2d 12 (1970)
AETNA INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Appellant,
v.
LOXAHATCHEE MARINA, INC., a Florida Corporation, Appellee.
Nos. 69-93, 69-239.
District Court of Appeal of Florida, Fourth District.
May 27, 1970.
*13 John R. Beranek, of Jones, Adams, Paine & Foster, West Palm Beach, for appellant.
Douglas C. Fulton, of Sales, Jones & Fulton, Palm Beach, for appellee.
MORROW, RUSSELL O., Associate Judge, (Ret.).
This is an appeal from a final judgment in a declaratory decree action brought by Aetna Insurance Company wherein the trial court found in favor of the defendant-appellee. Consolidated herewith is an interlocutory appeal by the plaintiff-appellant from the court's order awarding attorney's fees in favor of defendant.
The record discloses the following facts: The Loxahatchee Marina, Inc., was in the business of boat sales and service. The plaintiff Aetna Insurance Company wrote insurance coverage for Loxahatchee which coverage included a general automobile liability clause and a general comprehensive liability clause, as follows:
"Coverage A  Bodily Injury Liability  Automobile. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile.
"Coverage B  Bodily Injury Liability  Except Automobile. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."
While the policy was in effect, Loxahatchee added to its business the selling, servicing and renting of motorcycles. It rented a motorcycle to one Phillips who was involved in an accident wherein he was injured and his passenger-wife was killed. Phillips sued Loxahatchee for injuries and wrongful death. Aetna denied coverage.
One McHale, an insurance agent, acted for both Aetna and Loxahatchee and the latter advised him to cover Loxahatchee completely. McHale contacted Aetna about motorcycle coverage. Aetna answered that this coverage would present a problem and suggested contacting another agency. McHale obtained an additional policy from Midwest Mutual pertaining to motorcycle coverage. Another agent of Aetna, told McHale by telephone that Aetna could not provide coverage. Intra-office communications of Aetna advised, among other things, that its policy in question would automatically pick up coverages if they were not excluded, and further that the mere fact that coverage for this rental operation was declined by telephone would not necessarily mean that the policy would not cover. No exclusion of motorcycle rentals was ever added to the policy. Midwest Mutual denied coverage for the death of the passenger on the motorcycle. After the accident the Field Auditor for Aetna made an audit of Loxahatchee's books, the purpose of which is to adjust the amount of premium charged the insured at the end of the insurance period. No reference was made in the audit to motorcycle renting and no additional premium was added. The payroll was used as a basis for the audit and included in the payroll were employees who worked on motorcycles.
An insurance expert testified for Loxahatchee concerning the insurance policy in question.
Questions for determination are: (1) Whether the lower court erred in holding that the insurance policy provided coverage *14 for the motorcycle accident; (2) whether "products hazard" exclusion eliminated coverage; and (3) whether admitting the insurance expert's testimony was error.
The lower court correctly held that there was coverage under the policy. The broad comprehensive clause reached these hazards of the business not specifically excluded. The expression of "problems" by Aetna to the local agent, the oral statement of no coverage and the intra-office communications that there was coverage, in nowise modify the clear wording of the policy, nor does the fact that additional coverage was suggested and obtained.
As to question numbered 2, "products hazard" was excluded from the policy; however, in the definition of "products hazard" there is excepted from the exclusion "any property * * * rented to * * * others but not sold". Also excepted is "the maintenance of vehicles owned * * * by * * * the insured". As to the motorcycle in question, the "products hazard" exclusion did not exclude the coverage provided under the comprehensive clause.[1]
On the final question, the expert in the insurance business testified as to the customs and usages in the insurance business, types of policies, premium rates, exclusions and other matters and also answered hypothetical questions. Aetna did not question the qualification of the witness but contends his testimony invaded the province of the trial judge to interpret the insurance contract. This contention is not tenable. The purpose of an expert witness is to aid the trier of the fact in the quest for truth in those areas which are not of common knowledge. Obscure connotations of an insurance policy can be greatly illuminated by knowledge of custom and usage in the industry as well as the expert's knowledge of terms which take on a different hue in the specialized field than in the field of general knowledge. In a case similar in several respects to the instant case three highly qualified insurance experts testified. Sparkman v. Highway Insurance Co., W.D. La. 1967, 266 F. Supp. 197.
The final judgment and order fixing attorney's fees are affirmed.
WALDEN and REED, JJ., concur.
NOTES
[1] "CONDITIONS.

"* * *
"3. Definitions.
"* * *
"(g) Products Hazard. The term `products hazard' means
"(l) Goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division (a) of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;
"(2) operations, including any act or omission in connection with operations performed by or on behalf of the named insured on the premises or elsewhere, whether or not goods or products are involved in such operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be `operations' within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division (a) of the declarations specifically includes completed operations."